OPINION OF THE COURT
Hancock, Jr., J.
This appeal presents a question of statutory construction which we have not addressed: whether a person aggrieved by a discriminatory practice in violation of the Human Rights Law may recover punitive damages in a court action brought pursuant to Executive Law § 297 (9). Based on our analysis of the statutory language and the relevant legislative history, we conclude that such damages are not recoverable.
I
Plaintiff — alleging sexual harassment in violation of the Human Rights Law — brought an action in Supreme Court pursuant to Executive Law § 297 (9) against her former em *495 ployer, Penthouse International, Ltd., and its chairman and principal shareholder, Robert Guccione, the publisher of Penthouse Magazine. After a nonjury trial, the court found that defendants had exploited plaintiff as an employee by, among other things, coercing her, as an implicit condition of her employment, into having sexual liaisons with two of Guccione’s business associates. The court granted plaintiff $60,000 for compensatory and $4,000,000 for punitive damages.
A majority at the Appellate Division found sufficient evidence in the record to support the conclusion of Supreme Court that plaintiff was the victim of quid pro quo sexual harassment and, with one Justice dissenting, affirmed the award of compensatory damages (see, Thoreson v Penthouse Intl., 179 AD2d 29, 31). The Appellate Division, however, held unanimously that punitive damages were not recoverable and vacated that part of the award. Both plaintiff and defendants have appealed to this Court by leave of the Appellate Division.
We agree with the majority at the Appellate Division that " 'the decision of the fact-finding court should not be disturbed upon appeal unless it is obvious that the court’s conclusions could not be reached under any fair interpretation of the evidence, especially when the findings of fact rest in large measure on considerations relating to the credibility of witnesses’ ” (id., at 31 [quoting Claridge Gardens v Menotti, 160 AD2d 544, 544-545]). Based on our review of the record, we hold, as did the Appellate Division majority, "that the totality of the circumstances, as perceived by the Trial Justice from the testimony, [permits] the conclusion that plaintiff was the victim of quid pro quo sexual harassment” (id., at 31) and that "it cannot be said that the amount of the compensatory damages awarded by the Trial Justice is without foundation” (id., at 31). We, therefore, affirm the compensatory damages award. Further discussion on this point is unnecessary.
The only question to be addressed is whether punitive damages are permissible in a statutory action under Executive Law § 297 (9). For reasons which follow, we concur with the Appellate Division that such damages are not permitted and, accordingly, affirm that portion of the order also.
II
In approaching the subject of punitive damages in a court action for Human Rights Law violations, it must be understood that we are discussing an action to enforce substantive *496 legal rights and duties created solely by statute. When it enacted Executive Law § 297 (9) to provide a judicial remedy for discriminatory practices in addition to the existing administrative remedies, the Legislature created a new statutory cause of action not previously cognizable at common law (see, Murphy v American Home Prods. Corp., 58 NY2d 293, 307; Matter of State Div. of Human Rights v Luppino, 35 AD2d 107, 112 [Hopkins, J., dissenting in part], revd sub nom. State Comma, for Human Rights v Speer, 29 NY2d 555).
Thus, to determine whether punitive damages are legally permissible in a court action we look to the statute — not to whether the nature of the wrong alleged would permit recovery under traditional concepts of punitive damages in tort law (see, e.g., Home Ins. Co. v American Home Prods. Corp., 75 NY2d 196, 203-204). It is settled that if an aggrieved person seeks relief for discriminatory practices before the State Division of Human Rights rather than in a court of law, punitive damages are not allowed (see, Executive Law § 297 [4] [c]; Matter of New York City Tr. Auth. v State Div. of Human Rights, 78 NY2d 207,. 216). The precise question before us, then, is: did the Legislature, in creating the cause of action in Executive Law § 297 (9), intend that an aggrieved person could recover punitive damages in a court action when, if that person had chosen the administrative alternative, such damages could not be recovered?
In searching for the legislative intent we, of course, first examine the words of the statute both for their meaning as used in the specific section and in their context as part of the statutory scheme (see, Price v Price, 69 NY2d 8, 13). Here, the particular language to be interpreted is:
"Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person had filed a complaint hereunder or with any local commission on human rights, or with the superintendent pursuant to the provisions of section two hundred ninety-six-a of this chapter” (Executive Law § 297 [9] [emphasis added]).
From the statutory language, it is evident that the word "damages” relates to one of the "remedies” for which a person "aggrieved by” an unlawful practice "shall have a cause of *497 action”. Nothing in the statute indicates that the Legislature, in making legal remedies available in a judicial proceeding, contemplated that the courts would grant relief for a purpose other than alleviating or rectifying the harm done to the person aggrieved by the discrimination. Certainly, no language suggests that the Legislature intended to authorize punitive relief in the nature of a fine for the purpose of punishing the wrongdoer or deterring similar conduct by others. Punitive damages, it has been held, are to:
"serve as a warning to others. They are intended as punishment for gross misbehavior for the good of the public and have been referred to as 'a sort of hybrid between a display of ethical indignation and the imposition of a criminal fine’. Punitive damages are allowed on the ground of public policy and not because the plaintiff had suffered any monetary damages for which he is entitled to reimbursement; the award goes to him simply because it is assessed in his particular suit. The damages may be considered expressive of the community attitude towards one who wilfully and wantonly causes hurt or injury to another” (Reynolds v Pegler, 123 F Supp 36, 38 [SD NY 1954], affd 223 F2d 429 [2d Cir 1955], cert denied 350 US 846 [quoted in Toomey v Farley, 2 NY2d 71, 83]; see, Home Ins. Co. v American Home Prods. Corp., 75 NY2d 196, 203-204, supra).
In administrative proceedings before the State Division, the purpose of the permissible remedies is solely to right the wrong done to the aggrieved person, not to punish the wrongdoer. This is reflected in the statute itself which limits the relief available to the aggrieved person to measures which will remedy the injurious effect of the discriminatory practice such as requiring that the practice cease (Executive Law § 297 [4] [c] [i]), or that an aggrieved employee be rehired or upgraded (§ 297 [4] [c] [ii]), or that "compensatory damages” be awarded (§ 297 [4] [c] [iii]).
That the Legislature has consistently been concerned with rectifying the wrong to the injured party caused by the discriminatory practice — not punishing the transgressor — is borne out by the relevant history of the Human Rights Law from the time of its original enactment in 1951 (L 1951, ch 800). For example, the report of the Governor’s committee *498 recommending the adoption of the 1968 amendment authorizing aggrieved persons to bring court actions (Executive Law § 297 [9]) makes it plain that the measure was designed to give aggrieved persons "a right of action in a court of competent jurisdiction for damages caused by such discriminatory practice”* (emphasis added) as an alternative to a proceeding before the Division. Significantly, in 1982 the Legislature rejected the recommendation of the State Assembly Subcommittee on Human Rights that it adopt an amendment empowering the State Division “to award exemplary damages for willful and persistent conduct to prevailing complainants in human rights cases” (In the Pursuit of Justice, Report of NY State Assembly Subcommittee on Human Rights [Mar. 25, 1982], at 10).
"Recommendation: Aggrieved persons should have a private cause of action for damages or equitable relief as an alternative to a proceeding before the Division.
"The Committee recommends that any individual subjected to a discriminatory practice should have a right of action in a court of competent jurisdiction for damages caused by such discriminatory practice or other appropriate relief, including the relief set forth in the proposed Human Rights Law. Although we would expect most aggrieved persons to use the less formal administrative procedures of the Division or a local human rights agency, they should not be required to do so” (Governor’s Committee Report, op. cit., at 41).
Finally, in a development which confirms that the Legislature never contemplated punitive damages as an appropriate remedy, in 1991 it amended the Human Rights Law (L 1991, ch 368, § 6) to add a specific provision for the award of punitive damages not to exceed the amount of $10,000, in cases of housing discrimination only (Executive Law § 297 [4] [c] [iv]). The logical inference, of course, from the Legislature’s action in expressly permitting punitive damages in housing cases is that such damages were not then recoverable for discrimination in other areas including employment (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 240 [expressio unius est exclusio alterius]). Indeed, from the legislative history it appears that the inference is justified. The amendment was adopted at the instance of the State Division of Human Rights so as to bring the Human Rights Law into compliance with the applicable Federal Fair Housing Amendments Act *499 (see, 42 USC § 3601 et seq.). In its memorandum recommending adoption of section 297 (4) (c) (iv), the State Division, in commenting on existing law, noted: "At present the Human Rights Law * * * [p]ermits only compensatory damages to aggrieved persons” (1991 McKinney’s Session Laws of NY, at 2030, 2031 [emphasis added]).
We thus conclude that permitting an aggrieved person to recover punitive damages in a court action would be incompatible with the nature of the remedial relief which the Legislature has consistently deemed appropriate for violations of the Human Rights Law. It would seem highly improbable that the Legislature in adopting Executive Law § 297 (9) could have intended to permit the recovery of punitive damages in a court proceeding when that relief is expressly excluded in a proceeding before the State Division. Such a construction of the statute would inevitably encourage aggrieved persons to avoid the administrative channel before the State Division and to bring their complaints instead in court proceedings where they might collect punitive damages. No reason has been suggested as to why the Legislature would have intended this consequence; on the contrary, the history surrounding the addition of section 297 (9) indicates that this was not its purpose and that it was expected that after its adoption "most aggrieved persons [would continue] to use the less formal administrative procedures of the Division or a local human rights agency” (Governor’s Committee Report, op. cit., at 41).
In sum, we agree with the Appellate Division that punitive damages are not permitted in a court action pursuant to Executive Law § 297 (9) (accord, Tyler v Bethlehem Steel Corp., 958 F2d 1176, 1190-1191 [2d Cir 1992]; Conan v Equitable Capital Mgt. Corp., 774 F Supp 209, 211 [SD NY 1991]).
The order of the Appellate Division should be affirmed, without costs.
Acting Chief Judge Simons and Judges Titone, Bellacosa and Smith concur; Judge Kaye taking no part.
Order affirmed, without costs.

 The Report of the Governor’s Committee to Review New York Laws and Procedures in the Area of Human Rights (Mar. 27,1968) part V (A), entitled "Remedies Available to Complainants” states: