Suarez, EJ.
(dissenting). I respectfully dissent. The issue on this appeal is whether the tenant’s motion to stay the execution of the warrant of eviction in this summary nuisance holdover proceeding was properly denied because of tenant’s substantial breach of a stipulation of settlement. I find that it was. The tenant’s “violent and frightening behavior,” as found by Civil Court, constitutes a substantial breach of the stipulation. The tenant was represented by counsel and by a guardian ad litem when he signed the stipulation. Parties to a civil dispute are free to chart their own litigation course. (See Braithwaite v Braithwaite, 299 AD2d 383 [2d Dept 2002]; 2285 Sedgwick Realty Corp. v Afua, 7 Misc 3d 134[A], 2005 NY Slip Op 50668[U] [App Term, 1st Dept 2005]; 960 Mgt. Corp. v Dzaba, 3 Misc 3d 127[A], 2004 NY Slip Op 50343[U] [App Term, 1st Dept *33 2004]; Sherman Nagle Realty Corp. v Cruz, 5 Misc 3d 140[A], 2004 NY Slip Op 51664[U] [App Term, 1st Dept 2004].) It was not necessary for the landlord to prove at the hearing held after the tenant was properly served with a notice of default, that “anyone’s safety was materially jeopardized” (majority op at 32) by the tenant’s outrageous behavior, but that such behavior was a substantial breach of the stipulation. Civil Court found it was. The tenant’s violation of the stipulation herein was not de minimis. (See Kalimian v Cutarella, 2003 NY Slip Op 50956[U] [App Term, 1st Dept 2003].)
The majority ignores the hearing testimony. The court credibly found that the tenant, without any reason or justification, not only punched* the building doorman in the chest with his finger (which alone may have constituted a substantial breach of the stipulation), but also threatened to kill him and during the incident said to another tenant, Suzie Finkelstein, “[T]hat goes for you too.” (Hearing transcript of Mar. 18, 2003 at 26-27.) The doorman, Roberto Ramos, and the commercial tenant, Suzie Finkelstein, albeit not of “some renown” (majority op at 31) certainly have the right to work and go about their business without being subjected to unwarranted threats and assault.
The majority minimizes the serious and substantial nature of tenant’s breach of the stipulation by stating:
“The hearing evidence established little more than that tenant—a jazz musician of some renown— threatened to ‘arrest’ a fellow tenant and argued with a management employee (Ramos) and either pointed a finger at Ramos or ‘punched’ Ramos in the chest ‘with his finger’ during a single, short-lived incident in the building lobby on January 15, 2003. The conduct depicted in the record, apparently reflective of psychological difficulties then experienced by the tenant, was not shown to have materially jeopardized anyone’s safety, especially considering that tenant undisputedly returned to the premises and passed through the lobby without incident and without ‘speak[ing] a word’ to Ramos later that same evening.” (Majority op at 31.)
By its surgical removal of the relevant facts from its recitation, . *34 the majority determines as a matter of law that the landlord failed to establish that the tenant’s conduct constituted a substantial breach of the stipulation. The majority states that the “tenant undisputedly returned to the premises and passed through the lobby without £speak[ing] a word’ to Ramos later that same evening,” without discussing that the police had removed tenant from the premises and rather than arresting him, brought him to Metropolitan Hospital where he remained for two to three hours before returning to the building. The majority seizes on the fact that Suzie Finkelstein, who was herself threatened by the tenant, “gave no indication that tenant touched Ramos much less ‘attacked’ him,” but fails to recite the record testimony which indicates that when the confrontation began, she might not have observed the attack as she was some distance from Roberto Ramos and the tenant. Suzie Finkelstein never testified that tenant did not punch Roberto Ramos.
Although the offensive conduct was denied by tenant, the hearing court properly found that his threats and assault constituted a substantial breach of the stipulation. The majority, while acknowledging that the stipulation, by its reference to the notice of termination, prohibited “threatening building staff and occupants” (majority op at 31 n) fails to explain how Civil Court erred when it determined that the assault and threats made by the tenant breached the stipulation. The majority’s determination (majority op at 32) that there is an absence of the “high threshold of proof. . . required for eviction,” quoting Domen Holding Co. v Aranovich (supra at 124) is unsupported, as herein the parties stipulated to the threshold of proof required for eviction.
The majority finds it significant that only Roberto Ramos provided evidence that tenant poked him in the chest, but does not dispute that the motion court had an opportunity to see and hear Roberto Ramos and to evaluate his credibility. The decision of the Civil Court as factfinder was reached under a fair interpretation of the evidence, undisputed by the majority, and as such should not be disturbed, especially where the findings of fact rest in large measure on considerations relating to the credibility of witnesses. (See Thoreson v Penthouse Intl., 80 NY2d 490, 495 [1992]; RHM Estates v Hampshire, 18 AD3d 326 [1st Dept 2005]; Claridge Gardens v Menotti, 160 AD2d 544, 544-545 [1990].)
While purporting to make findings contrary to those of the motion court, the majority has, in effect, set aside the stipula *35 tian by its determination that the landlord failed to establish that the tenant substantially breached the stipulation, where the tenant’s violent behavior and threats, as found by Civil Court, is clearly prohibited by the unambiguous terms of the stipulation and its reference to the notice of termination. A stipulation is an independent contract subject to the well settled principles of contractual interpretation, and unless public policy is affronted, should be enforced according to its terms. (See Mill Rock Plaza Assoc. v Lively, 224 AD2d 301 [1st Dept 1996]; Edge-water Park Owners Coop., Inc. v Archambault, 2001 NY Slip Op 40503[U] [App Term, 1st Dept 2001]; Kalimian v Cutarella, supra.)
I would affirm the order of Civil Court.
McCooe and Schoenfeld, JJ., concur; Suarez, EJ., dissents in a separate opinion.

 The majority’s semantic discussion of Roberto Ramos’ and this dissent’s use of the word “punch” to describe tenant’s conduct is misplaced. The first definition of “punch” in Webster’s Third New International Dictionary, Unabridged (2002 ed), is “to prod with a stick or other blunt object.” (Emphasis supplied.)