*349 Justice Breyer
delivered the opinion of the Court.
The question we address today concerns a large state-court punitive damages award. We are asked whether the Constitution’s Due Process Clause permits a jury to base that award in part upon its desire to punish the defendant for harming persons who are not before the court (e. g., victims whom the parties do not represent). We hold that such an award would amount to a taking of “property” from the defendant without due process.
I
This lawsuit arises out of the death of Jesse Williams, a heavy cigarette smoker. Respondent, Williams’ widow, represents his estate in this state lawsuit for negligence and deceit against Philip Morris, the manufacturer of Marlboro, the brand that Williams favored. A jury found that Williams’ death was caused by smoking; that Williams smoked in significant part because he thought it was safe to do so; *350 and that Philip Morris knowingly and falsely led him to believe that this was so. The jury ultimately found that Philip Morris was negligent (as was Williams) and that Philip Morris had engaged in deceit. In respect to deceit, the claim at issue here, it awarded compensatory damages of about $821,000 (about $21,000 economic and $800,000 noneconomic) along with $79.5 million in punitive damages.
The trial judge subsequently found the $79.5 million punitive damages award “excessive,” see, e. g., BMW of North America, Inc. v. Gore, 517 U. S. 559 (1996), and reduced it to $32 million. Both sides appealed. The Oregon Court of Appeals rejected Philip Morris’ arguments and restored the $79.5 million jury award. Subsequently, Philip Morris sought review in the Oregon Supreme Court (which denied review) and then here. We remanded the case in light of State Farm Mut. Automobile Ins. Co. v. Campbell, 538 U. S. 408 (2003). 540 U. S. 801 (2003). The Oregon Court of Appeals adhered to its original views. And Philip Morris sought, and this time obtained, review in the Oregon Supreme Court.
Philip Morris then made two arguments relevant here. First, it said that the trial court should have accepted, but did not accept, a proposed “punitive damages” instruction that specified the jury could not seek to punish Philip Morris for injury to other persons not before the court. In particular, Philip Morris pointed out that the plaintiff’s attorney had told the jury to “think about how many other Jesse Williams in the last 40 years in the State of Oregon there have been. ... In Oregon, how many people do we see outside, driving home . . . smoking cigarettes? . . . [Cigarettes . . . are going to kill ten [of every hundred]. [And] the market share of Marlboros [i e., Philip Morris] is one-third [i e., one of every three killed].” App. 197a, 199a. In light of this argument, Philip Morris asked the trial court to tell the jury that “you may consider the extent of harm suffered by others in determining what [the] reasonable relationship is” be *351 tween any punitive award and “the harm caused to Jesse Williams” by Philip Morris’ misconduct, “[but] you are not to punish the defendant for the impact of its alleged misconduct on other persons, who may bring lawsuits of their own in which other juries can resolve their claims . . . Id., at 280a. The judge rejected this proposal and instead told the jury that “[p]unitive damages are awarded against a defendant to punish misconduct and to deter misconduct,” and “are not intended to compensate the plaintiff or anyone else for damages caused by the defendant’s conduct.” Id., at 283a. In Philip Morris’ view, the result was a significant likelihood that a portion of the $79.5 million award represented punishment for its having harmed others, a punishment that the Due Process Clause would here forbid.
Second, Philip Morris pointed to the roughly 100-to-l ratio the $79.5 million punitive damages award bears to $821,000 in compensatory damages. Philip Morris noted that this Court in BMW emphasized the constitutional need for punitive damages awards to reflect (1) the “reprehensibility” of the defendant’s conduct, (2) a “reasonable relationship” to the harm the plaintiff (or related victim) suffered, and (3) the presence (or absence) of “sanctions,” e. g., criminal penalties, that state law provided for comparable conduct, 517 U. S., at 575-585. And in State Farm, this Court said that the longstanding historical practice of setting punitive damages at two, three, or four times the size of compensatory damages, while “not binding,” is “instructive,” and that “[s]ingle-digit multipliers are more likely to comport with due process.” 538 U. S., at 425. Philip Morris claimed that, in light of this case law, the punitive award was “grossly excessive.” See TXO Production Corp. v. Alliance Resources Corp., 509 U. S. 443, 458 (1993) (plurality opinion); BMW, supra, at 574-575; State Farm, supra, at 416-417.
The Oregon Supreme Court rejected these and other Philip Morris arguments. In particular, it rejected Philip Morris’ claim that the Constitution prohibits a state jury *352 “from using punitive damages to punish a defendant for harm to nonparties.” 340 Ore. 35, 51-52, 127 P. 3d 1165, 1175 (2006). And in light of Philip Morris’ reprehensible conduct, it found that the $79.5 million award was not “grossly excessive.” Id., at 63-64, 127 P. 3d, at 1181-1182.
Philip Morris then sought certiorari. It asked us to consider, among other things, (1) its claim that Oregon had unconstitutionally permitted it to be punished for harming nonparty victims; and (2) whether Oregon had in effect disregarded “the constitutional requirement that punitive damages be reasonably related to the plaintiff’s harm.” Pet. for Cert. (I). We granted certiorari limited to these two questions.
For reasons we shall set forth, we consider only the first of these questions. We vacate the Oregon Supreme Court’s judgment, and we remand the case for further proceedings.
II
This Court has long made clear that “[pjunitive damages may properly be imposed to further a State’s legitimate interests in punishing unlawful conduct and deterring its repetition.” BMW, supra, at 568. See also Gertz v. Robert Welch, Inc., 418 U. S. 323, 350 (1974); Newport v. Fact Concerts, Inc., 453 U. S. 247, 266-267 (1981); Pacific Mut. Life Ins. Co. v. Haslip, 499 U. S. 1, 22 (1991). At the same time, we have emphasized the need to avoid an arbitrary determination of an award’s amount. Unless a State insists upon proper standards that will cabin the jury’s discretionary authority, its punitive damages system may deprive a defendant of “fair notice ... of the severity of the penalty that a State may impose,” BMW, supra, at 574; it may threaten “arbitrary punishments,” i. e., punishments that reflect not an “application of law” but “a decisionmaker’s caprice,” State Farm, supra, at 416, 418 (internal quotation marks omitted); and, where the amounts are sufficiently large, it may impose one State’s (or one jury’s) “policy choice,” say, as to the condi *353 tions under which (or even whether) certain products can be sold, upon “neighboring States” with different public policies, BMW, supra, at 571-572.
For these and similar reasons, this Court has found that the Constitution imposes certain limits, in respect both to procedures for awarding punitive damages and to amounts forbidden as “grossly excessive.” See Honda Motor Co. v. Oberg, 512 U. S. 415, 432 (1994) (requiring judicial review of the size of punitive awards); Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U. S. 424, 443 (2001) (review must be de novo); BMW, supra, at 574-585 (excessiveness decision depends upon the reprehensibility of the defendant’s conduct, whether the award bears a reasonable relationship to the actual and potential harm caused by the defendant to the plaintiff, and the difference between the award and sanctions “authorized or imposed in comparable cases”); State Farm, supra, at 425 (excessiveness more likely where ratio exceeds single digits). Because we shall not decide whether the award here at issue is “grossly excessive,” we need now only consider the Constitution’s procedural limitations.
III
In our view, the Constitution’s Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, i. e., injury that it inflicts upon those who are, essentially, strangers to the litigation. For one thing, the Due Process Clause prohibits a State from punishing an individual without first providing that individual with “an opportunity to present every available defense.” Lindsey v. Normet, 405 U. S. 56, 66 (1972) (internal quotation marks omitted). Yet a defendant threatened with punishment for injuring a nonparty victim has no opportunity to defend against the charge, by showing, for example in a case such as this, that the other victim was not entitled to dam *354 ages because he or she knew that smoking was dangerous or did not rely upon the defendant’s statements to the contrary.
For another, to permit punishment for injuring a nonparty victim would add a near standardless dimension to the punitive damages equation. How many such victims are there? How seriously were they injured? Under what circumstances did injury occur? The trial will not likely answer such questions as to nonparty victims. The jury will be left to speculate. And the fimdamental due process concerns to which our punitive damages cases refer — risks of arbitrariness, uncertainty, and lack of notice — will be magnified. State Farm, 538 U. S., at 416, 418; BMW, 517 U. S., at 574.
Finally, we can find no authority supporting the use of punitive damages awards for the purpose of punishing a defendant for harming others. We have said that it may be appropriate to consider the reasonableness of a punitive damages award in light of the potential harm the defendant’s conduct could have caused. But we have made clear that the potential harm at issue was harm potentially caused the plaintiff. See State Farm, supra, at 424 (“[W]e have been reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award” (emphasis added)). See also TXO, 509 U. S., at 460-462 (plurality opinion) (using same kind of comparison as basis for finding a punitive award not unconstitutionally excessive). We did use the term “error-free” (in BMW) to describe a lower court punitive damages calculation that likely included harm to others in the equation. 517 U. S., at 568, n. 11. But context makes clear that the term “error-free” in the BMW footnote referred to errors relevant to the case at hand. Although elsewhere in BMW we noted that there was no suggestion that the plaintiff “or any other BMW purchaser was threatened with any additional potential harm” by the defendant’s conduct, we did not purport to decide the question of harm to others. Id., at 582. Rather, the opinion appears to have left the question open.
*355 Respondent argues that she is free to show harm to other vietims because it is relevant to a different part of the punitive damages constitutional equation, namely, reprehensibility. That is to say, harm to others shows more reprehensible conduct. Philip Morris, in turn, does not deny that a plaintiff may show harm to others in order to demonstrate reprehensibility. Nor do we. Evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible — although counsel may argue in a particular case that conduct resulting in no harm to others nonetheless posed a grave risk to the public, or the converse. Yet for the reasons given above, a jury may not go further than this and use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties.
Given the risks of unfairness that we have mentioned, it is constitutionally important for a court to provide assurance that the jury will ask the right question, not the wrong one. And given the risks of arbitrariness, the concern for adequate notice, and the risk that punitive damages awards can, in practice, impose one State’s (or one jury’s) policies (e. g., banning cigarettes) upon other States — all of which accompany awards that, today, may be many times the size of such awards in the 18th and 19th centuries, see id., at 594-595 (Breyer, J., concurring) — it is particularly important that States avoid procedure that unnecessarily deprives juries of proper legal guidance. We therefore conclude that the Due Process Clause requires States to provide assurance that juries are not asking the wrong question, i. e., seeking, not simply to determine reprehensibility, but also to punish for harm caused strangers.
IV
Respondent suggests as well that the Oregon Supreme Court, in essence, agreed with us, that it did not authorize punitive damages awards based upon punishment for harm caused to nonparties. We concede that one might read some *356 portions of the Oregon Supreme Court’s opinion as focusing only upon reprehensibility. See, e.g., 340 Ore., at 51, 127 P. 3d, at 1175 (“[T]he jury could consider whether Williams and his misfortune were merely exemplars of the harm that Philip Morris was prepared to inflict on the smoking public at large”). But the Oregon court’s opinion elsewhere makes clear that that court held more than these few phrases might suggest.
The instruction that Philip Morris said the trial court should have given distinguishes between using harm to others as part of the “reasonable relationship” equation (which it would allow) and using it directly as a basis for punishment. The instruction asked the trial court to tell the jury that “you may consider the extent of harm suffered by others in determining what [the] reasonable relationship is” between Philip Morris’ punishable misconduct and harm caused to Jesse Williams, “[but] you are not to punish the defendant for the impact of its alleged misconduct on other persons, who may bring lawsuits of their own in which other juries can resolve their claims . . . .” App. 280a (emphasis added). And as the Oregon Supreme Court explicitly recognized, Philip Morris argued that the Constitution “prohibits the state, acting through a civil jury, from using punitive damages to punish a defendant for harm to nonparties.” 340 Ore., at 51-52, 127 P. 3d, at 1175.
The court rejected that claim. In doing so, it pointed out (1) that this Court in State Farm had held only that a jury could not base its award upon “dissimilar” acts of a defendant. 340 Ore., at 52-53, 127 P. 3d, at 1175-1176. It added (2) that “[i]f a jury cannot punish for the conduct, then it is difficult to see why it may consider it at all.” Id., at 52, n. 3, 127 P. 3d, at 1175, n. 3. And it stated (3) that “[i]t is unclear to us how a jury could ‘consider’ harm to others, yet withhold that consideration from the punishment calculus.” Ibid.
The Oregon court’s first statement is correct. We did not previously hold explicitly that a jury may not punish for the *357 harm caused others. But we do so hold now. We do not agree with the Oregon court’s second statement. We have explained why we believe the Due Process Clause prohibits a State’s inflicting punishment for harm caused strangers to the litigation. At the same time we recognize that conduct that risks harm to many is likely more reprehensible than conduct that risks harm to only a few. And a jury consequently may take this fact into account in determining reprehensibility. Cf., e. g., Witte v. United States, 515 U. S. 389, 400 (1995) (recidivism statutes taking into account a criminal defendant’s other misconduct do not impose an “ ‘additional penalty for the earlier crimes,’ but instead ... ‘a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one’” (quoting Gryger v. Burke, 334 U. S. 728, 732 (1948))).
The Oregon court’s third statement raises a practical problem. How can we know whether a jury, in taking account of harm caused others under the rubric of reprehensibility, also seeks to punish the defendant for having caused injury to others? Our answer is that state courts cannot authorize procedures that create an unreasonable and unnecessary risk of any such confusion occurring. In particular, we believe that where the risk of that misunderstanding is a significant one — because, for instance, of the sort of evidence that was introduced at trial or the kinds of argument the plaintiff made to the jury — a court, upon request, must protect against that risk. Although the States have some flexibility to determine what kind of procedures they will implement, federal constitutional law obligates them to provide some form of protection in appropriate cases.
V
As the preceding discussion makes clear, we believe that the Oregon Supreme Court applied the wrong constitutional standard when considering Philip Morris’ appeal. We remand this ease so that the Oregon Supreme Court can apply *358 the standard we have set forth. Because the application of this standard may lead to the need for a new trial, or a change in the level of the punitive damages award, we shall not consider whether the award is constitutionally “grossly excessive.” We vacate the Oregon Supreme Court’s judgment and remand the case for further proceedings not inconsistent with this opinion.

It is so ordered.