R2 Invs. LDC v Icahn (2018 NY Slip Op 03623)





R2 Invs. LDC v Icahn


2018 NY Slip Op 03623


Decided on May 17, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 17, 2018

Friedman, J.P., Sweeny, Kahn, Oing, JJ.


6591 601296/09 650499/10

[*1]R2 Investments LDC, Plaintiff-Appellant,
v
Carl C. Icahn, et al., Defendants-Respondents.
Youlu Zheng, Plaintiff-Appellant, Donald J. Hillenmeyer, on behalf of themselves and all others similarly situated, Plaintiff,
v
Carl C. Icahn, et al., Defendants-Respondents.


Zeichner Ellman & Krause LLP, New York (Jeff Ross of counsel), for R2 Investments Ltd., appellant.
Abbey Spanier, LLP, New York (Judith L. Spanier of counsel), for Youlu Zheng, appellant.
Law Office of Robert R. Viducich, New York (Robert R. Viducich of counsel), for respondents.



Order, Supreme Court, New York County (Charles E. Ramos, J.), entered October 31, 2016, which, after a nonjury trial, directed entry of a judgment dismissing the complaints with prejudice, unanimously affirmed, without costs.
Plaintiffs waived any objections to the admission of defendants' Exhibit D-4, which included deposition transcripts from the record of a prior appeal before this Court. They stated a cursory objection to the admission of that exhibit before trial, never sought a ruling at trial, and never objected or renewed their objections in response to defendants' citations to Exhibit D-4 in their Proposed Findings of Fact and Conclusions of Law (see Marine Midland Bank v Russo Produce Co. , 50 NY2d 31, 41 [1980]). Moreover, to the extent the trial court erred in relying on any of that evidence, the error did not prejudice a substantial right of plaintiffs (CPLR 2002), since it was not dispositive of the court's ruling, which turned on expert valuations and evidence of the activities of the Special Committees that were presented at trial.
A fair interpretation of the trial evidence supports the court's determination that the 2008 Recapitalization and 2011 Merger were "entirely fair" under Delaware law and that there was no breach of fiduciary duty by defendants (see Thoreson v Penthouse Intl. , 80 NY2d 490, 495 [1992]; Americas Min. Corp. v Theriault , 51 A3d 1213, 1239 [Del 2012] [discussing "entire fairness" standard]; In re Loral Space & Communications Consol. Litig. , 2008 WL 4293781, *22, 2008 Del Ch LEXIS 136, *75-76 [Del Ch 2008] [same]). Contrary to plaintiffs' contention, in concluding that plaintiffs received fair consideration, i.e., a fair price, for their shares of nominal defendant XO Holdings Inc. (XO) in the merger with one of the defendant companies controlled by defendant Carl C. Icahn, who also was the controlling shareholder of XO, the court did not rely "almost exclusively" on the market price of XO's stock. While it considered the [*2]market price, the court exhaustively detailed its reasons for finding defendants' valuation expert more credible than plaintiffs' expert. Among other things, no evidence supported plaintiffs' expert's valuation, and the valuation was significantly higher than that of J.P. Morgan, an independent financial advisor to the 2011 Special Committee. J.P. Morgan also had issued a written opinion that the merger was fair to XO's minority shareholders from a financial point of view. The court aptly observed that defendant Icahn was the only buyer who could potentially realize a tax benefit from XO's net operating losses and would therefore be willing to pay as much as $1.40 per share.
A fair interpretation of the trial evidence also supports the court's determination that Icahn did not interfere with the 2008 and 2011 Special Committees' work or impede any market check for potential competing bidders (Americas Min. Corp. 51 A3d at 1239-1240 [Del 2012], citing Kahn v Lynch Communication Sys., Inc. , 638 A2d 1110, 1117 [Del 1994]). Although a market check is preferred, because it can be a reliable basis for assessing a company's value and can provide leverage in negotiating a corporate transaction with a controlling shareholder (see e.g. In re Books-A-Million, Inc. Stockholders Litig. , 2016 WL 5874974, *15 [Del Ch Oct. 10, 2016], affd 164 A3d 56 [Del 2017]), the court correctly concluded, on these facts, that the Special Committees' failure to conduct a market check in 2008 or 2011 does not suggest that Icahn influenced or interfered with their process, including that of their legal and financial advisors, or that defendants breached any fiduciary duties. Moreover, as the court observed, a market check here posed risks to the already financially poor XO. A market check could have resulted in a price substantially below the $1.40 negotiated with Icahn, who, unlike other potential third-party bidders, could benefit from XO's net operating losses. Icahn owned XO affiliates and thus could offset the affiliates' profits, and thus his tax liability, by using the net operating losses on a consolidated tax return. In addition, Robert Knauss, a member of the Special Committees, testified that XO had been losing customers because "the company was constantly up for sale."
We have considered plaintiffs' remaining contentions and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 17, 2018
CLERK