Argued and submitted September 18, 2009, decision of Court of Appeals reversed;
judgment of circuit court affirmed January 6, 2011

Ken HAMLIN,
*Petitioner on Review,*

*v.*

HAMPTON LUMBER MILLS, INC.,
an Oregon corporation,
dba Willamina Lumber Company,
*Respondent on Review.*

(CC 040302235; CA A130213; SC S056700)

246 P3d 1121

Craig A. Crispin, Crispin Employment Lawyers, Portland, argued the cause and filed the brief for petitioner on review.

Brenda K. Baumgart, Barran Liebman LLP, Portland, argued the cause and filed the brief for respondent of review. With her on the brief was Edwin A. Harnden.

Phil Goldsmith, Portland, filed the briefs for *amicus curiae* Oregon Trial Lawyers Association.

Before De Muniz, Chief Justice, Durham, Balmer, Kistler, Walters, and Linder, Justices, and Gillette, Justice pro tempore.**

WALTERS, J.

Gillette, J. pro tempore, filed a dissenting opinion in which Balmer, J., joined.

---

** Landau, J., did not participate in the consideration or decision of this case.

**WALTERS, J.**

In this case, plaintiff was injured while working at defendant's mill. When plaintiff was released to return to work, defendant refused to reinstate him as required by ORS 659A.043, falsely asserting that he was a "safety risk." A jury awarded plaintiff lost wages of $6,000 and punitive damages of $175,000. On appeal, the Court of Appeals held that the punitive damages award was "grossly excessive" under the Due Process Clause of the United States Constitution and reduced the award to a sum four times the amount of the compensatory damages. *Hamlin v. Hampton Lumber Mills, Inc.*, 222 Or App 230, 238, 193 P3d 46 (2008), *on recons*, 227 Or App 165, 205 P3d 70 (2009). Having allowed plaintiff's petition for review, we now reverse the decision of the Court of Appeals and reinstate the punitive damages award.

In accordance with the jury's verdict, we state the facts in the light most favorable to plaintiff. *See Jensen v. Medley*, 336 Or 222, 226, 82 P3d 149 (2003) ("We state the facts in the light most favorable to plaintiff, because [plaintiff] was the prevailing party before the jury."). Defendant operated a lumber mill and employed approximately 380 employees. Defendant employed plaintiff as a temporary employee through Express Personnel Services (Express). When plaintiff came to work at defendant's mill, defendant did not instruct plaintiff how to "lock out" its machinery to safely clear jams and avoid injury, nor did it issue plaintiff the locks necessary to do so. Instead, plaintiff was instructed to watch the other employees and to do what they did. On the night that plaintiff was injured, defendant directed plaintiff to stand at a specified location, which later was determined to be unsafe. Plaintiff did as instructed, and when a board became wedged between a conveyor belt and a bin, plaintiff was unable to "lock out" the machinery and safely clear the jam. One of defendant's employees told plaintiff to grab the board, and when he attempted to do so, the machinery caught his glove and mangled his thumb.

Plaintiff was hospitalized and unable to work for four months. During that time, defendant twice told plaintiff that his job was secure. Defendant did not suggest to plaintiff or anyone else that plaintiff was a "safety risk" or that he had

been at fault in causing his injury. Defendant prepared a written report describing the incident in which plaintiff had been injured. That report did not suggest that plaintiff was responsible for his own injury or that he constituted a "safety risk."

While he was unable to work, plaintiff filed a claim for workers' compensation benefits, which was granted, and a safety complaint with Oregon Occupational Safety and Health Administration (OSHA), which was dismissed. When plaintiff's physicians released him to resume work, plaintiff contacted Express and sought reinstatement at defendant's mill.

Express contacted the Oregon Bureau of Labor and Industries (BOLI) to inquire whether a temporary employee in plaintiff's position had reinstatement rights. Express learned that defendant generally was required to reinstate temporary employees, such as plaintiff, under ORS 659A.043,[1] and communicated that information to defendant. Defendant deliberately decided not to reinstate plaintiff and falsely asserted that he was a "safety risk."

Plaintiff then filed this action against defendant, asserting (among other claims)[2] a claim for failure to reinstate under ORS 659A.043 and a claim for retaliation for filing charges with OSHA under ORS 654.062(5).[3] Plaintiff

---

[1] ORS 659A.043(1) provides:

"A worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon demand for such reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of such position."

[2] Plaintiff asserted a total of four claims for relief against defendant: failing to reinstate him (ORS 659A.043), retaliating against him for making a safety complaint to Oregon OSHA (ORS 654.062(5)), retaliating against him for filing a workers' compensation claim (ORS 659A.040), and wrongful termination. The jury decided against plaintiff on his claims for workers' compensation retaliation and for wrongful discharge. No issues regarding the claims other than the failure to reinstate claim are presented on review.

[3] ORS 654.062(5) provides:

"It is an unlawful employment practice for any person to bar or discharge from employment or otherwise discriminate against any employee or prospective employee because the employee or prospective employee has:

"(a) Opposed any practice forbidden by ORS 654.001 to 654.295, 654.412 to 654.423 and 654.750 to 654.780;

"(b) Made any complaint or instituted or caused to be instituted any proceeding under or related to ORS 654.001 to 654.295, 654.412 to 654.423 and

sought $10,968 in economic damages, $100,000 in noneconomic damages, and $969,000 in punitive damages. A jury rendered a verdict for plaintiff on his failure to reinstate claim and awarded him lost wages of $6,000.[4] The court rendered a verdict for plaintiff on his OSHA retaliation claim and awarded him lost wages of $10,000.[5]

The court instructed the jury that, to award punitive damages, it must find by clear and convincing evidence that defendant's conduct amounted to "a particularly aggravated, deliberate disregard of the rights of others." The court permitted the jury to consider various factors in determining the amount of punitive damages to award, including "the sum of money that would be required to discourage the defendant and others from engaging in such conduct in the future; and the income and assets of the defendant." The jury awarded punitive damages of $175,000.

Defendant filed a motion for judgment notwithstanding the verdict or for a new trial, contending that the trial court was required to reduce the punitive damages award to comport with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Specifically, defendant asserted that the punitive damages award in this case failed to meet the constitutionality "guideposts" prescribed by the United States Supreme Court in *BMW of North America, Inc. v. Gore*, 517 US 559, 116 S Ct 1589, 134 L Ed 2d 809 (1996), and other cases. Defendant argued (among other things) that the ratio between the compensatory and punitive damages was close to 30:1 and greatly in excess of the single-digit ratio demanded by due

---

654.750 to 654.780, or has testified or is about to testify in any such proceeding; or

"(c) Exercised on behalf of the employee, prospective employee or others any right afforded by ORS 654.001 to 654.295, 654.412 to 654.423 and 654.750 to 654.780."

[4] The jury found that plaintiff's lost wages were $10,000, but that he had unreasonably failed to mitigate $4,000 of those damages. The jury declined to award noneconomic damages.

[5] Unlike the jury, the court rejected defendant's argument that plaintiff had unreasonably failed to mitigate his damages on the OSHA retaliation claim. Violation of ORS 654.062(5) does not permit an award of noneconomic or punitive damages. ORS 659A.885(3) (authorizing punitive damages for violations of listed statutes, not including ORS 654.062(5)).

process. In opposing defendant's motion, plaintiff argued that the Supreme Court expressly had declined to impose a strict ratio and that the sum awarded by the jury was appropriate to meet the state's interest in deterring and punishing illegal conduct. The trial court agreed with plaintiff, concluded that the punitive damages award "was not unconstitutionally excessive," and entered judgment against defendant for the full amount of damages awarded by the jury.[6]

Defendant appealed to the Court of Appeals, renewing its assertion that the punitive damages award in this case was so "grossly excessive" that it violated due process. The Court of Appeals agreed. It reasoned that, measured by the guideposts articulated in *Gore* and other United States Supreme Court cases and reviewed and refined by this court in *Goddard v. Farmers Ins. Co.*, 344 Or 232, 179 P3d 645 (2008), the punitive damages verdict was unconstitutionally large. *Hamlin*, 222 Or App at 238. The Court of Appeals decided that defendant's actions were only moderately reprehensible and had produced only economic harm, *id.* at 239-41, that the nearly 30:1 ratio between punitive and compensatory damages was well outside the asserted 4:1 limit for such cases, *id.* at 241-44, and that the third guidepost, which examines comparable civil and criminal sanctions, was unhelpful either way. *Id.* at 246-47. The court therefore concluded that the constitutional limit on the punitive damages award was four times the amount of the compensatory damages award (*i.e.*, four times $6,000 plus prejudgment interest). *Id.* at 250.

On review, plaintiff argues that the Court of Appeals erred in applying the ratio guidepost too strictly. Plaintiff contends that when, as in this case, a compensatory damages award is small, a punitive damages award that is more than a single-digit multiplier of the compensatory damages award

---

[6] The trial court entered two separate "general money judgments" in this case, one on August 25, 2005, the other on October 20, 2005. The judgments are essentially identical, save for the pre- and post-judgment interest provisions. Both judgments awarded plaintiff $185,000—compensatory damages of $10,000 (constituting both the $6,000 awarded by the jury on the failure to reinstate claim and the $10,000 awarded by the trial court on the OSHA retaliation claim) and punitive damages of $175,000. The trial court later entered a supplemental judgment awarding plaintiff $72,506.90 in attorney fees, plus costs. Defendant does not contest the computation of those judgments in this court.

is constitutionally permissible. Plaintiff also asserts that, because defendant's conduct violated a statute, and particularly a statute prohibiting discrimination against a worker, its conduct is more than moderately reprehensible.

■　　Before we consider the merits of plaintiff's arguments, we first review the decisions of the United States Supreme Court that discuss the limitations that the Due Process Clause of the Fourteenth Amendment imposes on awards of punitive damages. The Court has held that that clause prohibits "grossly excessive" punitive damages awards. *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 US 408, 416, 123 S Ct 1513, 155 L Ed 2d 585 (2003); *Gore*, 517 US at 568. "Grossly excessive" punitive damages awards are awards that serve no legitimate state purpose and constitute an arbitrary deprivation of property. *Campbell*, 538 US at 417.

■　　The Supreme Court has instructed courts that, to arrive at a conclusion about whether a punitive damages award is "grossly excessive," they are to consider three "guideposts." *See id.* at 418 (summarizing guideposts); *Gore*, 517 US at 574-75 (noting guideposts). The first guidepost is the degree to which defendant's conduct is reprehensible. *Campbell*, 538 US at 418; *Gore*, 517 US at 575. The second guidepost examines the disparity between the punitive and compensatory damages awards, usually in the form of a ratio. *See Campbell*, 538 US at 424-25; *Gore*, 517 US at 580 (both so explaining). The third guidepost compares the punitive damages award to legislatively prescribed civil and criminal penalties for comparable misconduct. *Campbell*, 538 US at 428; *Gore*, 517 US at 583.

　　The second guidepost is the only quantitative guidepost that the Supreme Court has announced. The Court has suggested that, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process[,]" *Campbell*, 538 US at 425. In this case, the Court of Appeals primarily relied on the ratio between punitive and compensatory damages in concluding that the award of punitive damages was "grossly excessive." *Hamlin*, 222 Or App at 241. Because plaintiff

challenges that analysis, we begin with the second guidepost and its applicability in this case.

Key to understanding the second guidepost is the Supreme Court's repeated refusal to set any "rigid benchmark" beyond which a punitive damages award becomes unconstitutional. *See, e.g., Campbell*, 538 US at 424-25; *Gore*, 517 US at 582 (both to that effect). The Court has explained that, "[i]n our federal system, States necessarily have considerable flexibility in determining the level of punitive damages that they will allow[,]" and that due process permits punitive damages that are "reasonably necessary to vindicate the State's legitimate interests in punishment and deterrence." *Gore*, 517 US at 568. Therefore, the Court has concluded that "[o]nly when an award can fairly be categorized as 'grossly excessive' in relation to these interests does it enter the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment." *Id.*

The Supreme Court also has recognized that a state may be unable to achieve its goals of deterrence and retribution if awards of punitive damages must, in all instances, be closely proportional to compensatory damages. In one of the first cases to discuss constitutional limits on punitive damages, the Court used a hypothetical from a 1931 law review article to explain why significant punitive damages may be appropriate in some cases:

> " 'For instance, a man wildly fires a gun into a crowd. By sheer chance, no one is injured and the only damage is to a $10 pair of glasses. A jury reasonably could find only $10 in compensatory damages, but thousands of dollars in punitive damages to teach a duty of care. We would allow a jury to impose substantial punitive damages in order to discourage future bad acts.' [*Garnes v. Fleming Landfill, Inc.*, 186 W Va 656, 661, 413 SE2d 897, 902] (citing C. Morris, *Punitive Damages in Tort Cases*, 44 Harv L Rev 1173, 1181 (1931)) [(hereinafter Morris)]."

*TXO Production Corp v. Alliance Resources Corp*, 509 US 443, 460, 113 S Ct 2711, 125 L Ed 2d 366 (1993). In the law review article that the Court cited, Professor Morris further described the admonitory function that tort damages—both compensatory and punitive—serve:

> "When an act with a vicious tendency happens to result in a small injury the 'compensatory' damages are necessarily small. If it must follow that the punitive damages must also be small, the total verdict might be lenient where severity is desirable. On the other hand, if the 'compensatory' damages are large, the defendant is severely admonished without the addition of any punitive damages; but in such a case the ratio test counsels large punitive damages, and may result in over-severity entirely unnecessary for the proper working of the admonitory function [of tort law]."

Morris, 44 Harv L Rev at 1182.

To address that concern, the Supreme Court has suggested that reviewing courts may consider not only the compensatory damages awarded by the jury, but also the potential harm that could have resulted from the defendant's acts. *Campbell*, 538 US at 418; *Gore*, 517 US at 581-82; *TXO*, 509 US at 460-61. The Supreme Court also has stated that higher ratios than otherwise permitted may be justified " 'in cases in which the injury is hard to detect' * * *, *or when the value of injury and the corresponding compensatory award are small*[.]" *Exxon Shipping Co. v. Baker*, 554 US 471, 494, 128 S Ct 2605, 171 L Ed 2d 570 (2008) (emphasis added).[7]

In this case, the Court of Appeals did not have the benefit of the Court's decision in *Exxon* and cited *Gore*, 517 US at 582, for the proposition that, to come within the exceptions identified in that case, not only must the compensatory damages be small, but a defendant's conduct also must be "particularly egregious." *Hamlin*, 222 Or App at 244-45. Although *Gore* identified the circumstance in which particularly egregious conduct results in small compensatory damages as one in which higher ratios may be permitted, the Court did so in the context of listing *examples* of the kinds of cases in which flexibility in applying ratios was necessary. In *Gore*, the Court stated:

> "Indeed, low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, *for example*, a particularly egregious act has resulted in

---

[7] The Court's holding in *Exxon* was based on federal maritime law, but the Court discussed the constitutional limits on punitive damages in the course of that opinion.

only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine. It is appropriate, therefore, to reiterate our rejection of a categorical approach."

517 US at 582 (emphasis added). The Supreme Court's purpose was to caution against the categorical use of ratios and not, in our view, to set forth an exclusive list of exceptions to a ratio requirement. *See Williams v. Philip Morris Inc.*, 340 Or 35, 63, 127 P3d 1165 (2006), *vac'd on other grounds*, 549 US 346, 127 S Ct 1057, 166 L Ed 2d 940 (2007), *on remand*, 344 Or 45, 176 P3d 1255 (2008) (identifying an exception to the general rule of single-digit ratios not listed in *Gore* for cases of "extraordinarily reprehensible" behavior).[8]

Lower federal and state courts have ruled accordingly. For example, in *Saunders v. Branch Banking and Trust Co. of VA*, 526 F3d 142, 152-54 (4th Cir 2008), the Fourth Circuit affirmed a punitive damages award of $80,000 when the compensatory award was $1,000. The court explained that other federal courts were in general agreement that, in that circumstance, limiting punitive damages to a single-digit ratio would fail to serve the purposes of punitive damages. The court stated:

"[W]hen a jury only awards nominal damages or a small amount of compensatory damages, a punitive damages award may exceed the normal single digit ratio because a smaller amount 'would utterly fail to serve the traditional purposes underlying an award of punitive damages, which

---

[8] The dissent charges that we wrongly "truncate" the *Gore* exception by dropping the requirement of "particularly egregious misconduct," 349 Or at 547 (Gillette, J., dissenting). However, the dissent also eliminates that requirement for punitive damages awards under $50,000 and, notably, thus necessarily recognizes that the *Gore* exceptions are not an exclusive list of the instances in which the multiplier of compensatory damages may exceed a single-digit. The difference between the dissent and the majority is that the dissent would judicially cap punitive damages in small compensatory damage cases at $50,000. The dissent suggests a legislative "solution to [the] quandary," 349 Or at 547-48, 550-51 (Gillette, J., dissenting), instead of confining its inquiry to the issue presented—the constitutional limits imposed by the Due Process Clause. The dissent's proposal is not drawn from Supreme Court precedent; instead it conflicts with the Supreme Court's refusal to set "rigid benchmarks" beyond which a punitive damages award becomes unconstitutional. *See, e.g., Campbell*, 538 US at 424-25; *Gore*, 517 US at 582 (both to that effect).

are to punish and deter.' *Kemp v. Am. Tel. & Tel. Co.*, 393 F3d 1354, 1364-65 (11th Cir 2004) (allowing punitive damages award of $250,000 accompanying compensatory damages of $115.05); *see also Abner v. Kan. City S. R.R.*, 513 F3d 154, 165 (5th Cir 2008) (affirming punitive damages award of $125,000 accompanying nominal damages of $1); *Mathias v. Accor Econ. Lodging, Inc.*, 347 F3d 672, 674-78 (7th Cir 2003) (affirming $186,000 punitive damages award accompanying compensatory damages of $5,000); *Lee v. Edwards*, 101 F3d 805, 811 (2d Cir 1996) (rejecting ratio analysis because 'the compensatory award here was nominal, [so] *any* appreciable exemplary award would produce a ratio that would appear excessive by this measure')."

*Id.* at 154 (brackets and emphasis in original).

*Goff v. Elmo Greer & Sons Const. Co., Inc.*, 297 SW3d 175 (Tenn 2009), *cert den*, ___ US ___, 130 S Ct 1910 (2010), is also illustrative. In that case, the defendant, a construction company working on a highway expansion project, intentionally buried tires and other waste under several feet of compacted rock on the plaintiff's property. For that conduct, a jury awarded the plaintiff $3,305 in compensatory damages and $1 million in punitive damages.[9] On review, the state supreme court first determined that defendant's conduct "d[id] not constitute an environmental hazard or threaten the health or safety of any individual" and that the defendant's actions did not reach the highest levels of reprehensibility; consequently, the ratio of 302:1 was excessive. *Id.* at 195. Nonetheless, the court rejected the defendant's argument that the federal constitution requires the punitive and compensatory damages ratio be in single digits, concluding that such a claim "reflects an overly restrictive view that does not comport with the Supreme Court's jurisprudence on the subject." *Id.* at 194. The court determined that a punitive damages award of $500,000 (a ratio of 151:1) was adequate to send a "strong message." *Id.* at 196.

■ We agree that, when the compensatory damages award is small and does not already serve an admonitory function, the second guidepost—the ratio between punitive

---

[9] The jury initially had awarded $2 million in punitive damages, but the trial court reduced the award to $1 million because that was what the plaintiff had sought in the complaint. *Goff*, 297 SW3d at 179.

and compensatory damages—is of limited assistance in determining whether the amount of a jury's punitive damages award meets or exceeds state goals of deterrence and retribution. If we rely too heavily on the ratio between punitive and compensatory damages in those circumstances, we risk interfering with legitimate state interests by striking down awards that are reasonably calculated to deter and punish illegal conduct and that are, therefore, constitutionally permitted.

■     Before considering the degree to which the ratio between the punitive and compensatory damages is a reliable indicator of unconstitutionality in this case, we must identify the damages awarded and calculate the ratio between them. We use the $175,000 punitive damages award as the numerator and the compensatory damages award of $6,000, plus prejudgment interest, as the denominator. *See Goddard*, 344 Or at 269-70 (prejudgment interest is considered as part of compensatory damages). For purposes of the ratio calculation in this opinion, we estimate the amount of prejudgment interest to be approximately $2,000[10] and calculate the ratio as approximately 22:1.

■ ■     In deciding whether the compensatory damages award is small, we are mindful, just as the Supreme Court has been, that the process of identifying due process limits demands flexibility and a consideration of the facts and circumstances that each case presents. Just as the Supreme Court has been unwilling to draw a rigid dividing line between constitutional and unconstitutional ratios, we are unwilling to draw a rigid line between "small" and "substantial" compensatory damages awards.

We do note, however, that we have characterized an award of compensatory damages of less than $25,000 as "relatively small" and "low." *Williams*, 340 Or at 60. Furthermore, a compendium of cases from other jurisdictions demonstrates that courts generally hold that, in instances in which compensatory awards are $12,000 or less, awards in excess of single-digit ratios are not "grossly excessive." *See* Lauren R. Goldman and Nicholai G. Levin, State Farm *at*

---

[10] As the Court of Appeals noted, some doubt exists regarding the correct amount of prejudgment interest. *See Hamlin*, 222 Or App at 243 n 6 (so indicating).

*Three: Lower Courts' Application of the Ratio Guidepost,* 2 NYU J L & Bus 509, 514-15 (2005-06) (of 40 decisions in which the compensatory damages award was $25,000 or less, 24 upheld punitive damages awards with a double-digit or higher ratio, and 23 of those 24 involved compensatory damages awards of $12,000 or less).

■　In this case, $6,000 in lost wages is a relatively small recovery that we would not expect to serve an admonitory, as well as a compensatory, function. Defendant does not argue, for example, that, due to its size or financial circumstances, the compensatory damages award here had a greater effect on it than we would anticipate that award having on a typical employer. Evidence in the record indicates that, in the year in which it violated ORS 659A.043, defendant employed approximately 380 workers, that its net worth was approximately $10 million, and that its gross profit was approximately $2.8 million. We conclude, therefore, that the fact that the ratio between punitive and compensatory damages is greater than a single digit does not, in itself, indicate that the punitive damages that the jury awarded were "grossly excessive."[11]

---

[11] Because we reach that conclusion, the dissent understands us to be drawing a numerical line between "small" and "substantial" compensatory damages awards that compels two different applications of the ratio guidepost and that, in its view, produces anomalous results. For instance, if we were to consider a compensatory damages award of $11,000 to be "small," but a compensatory damages award of $12,000 to be "substantial," it would be anomalous for the former award to justify a punitive damages award of $175,000 (a 16:1 ratio), but the latter award to justify a punitive damages award of only $48,000 (a 4:1 ratio). We have three responses.

First, we do not intend to draw a hard and fast numerical line between "small" and "substantial" compensatory damage awards. What is "small" will depend on the facts and circumstances of each case and the admonitory effect of the compensatory damages.

Second, we see the proportionality aspect of the due process analysis as a continuum—the lower the compensatory damages, the higher the permitted ratio and, conversely, the higher the compensatory damages, the lower the permitted ratio. Thus, for example, if a jury were to award compensatory damages of $100, a punitive damage award of 100 times that sum—an award of $10,000—could be justified. But if a jury were to award compensatory damages of $10,000, a punitive damages award of 100 times that sum—an award of $1 million—could be "grossly excessive." Understood in that way, the difference between compensatory damages of $11,000 and compensatory damages of $12,000 would not result in a choice between a 16:1 or a 4:1 ratio. If a defendant's conduct caused $11,000 in compensatory damages and justified a punitive damages award of $175,000, neither this court nor the Supreme Court has held that similar conduct that resulted in compensatory damages of $12,000 could not justify a similar punitive damages award.

■    We therefore turn to the other guideposts that the Supreme Court has identified for assistance. The first of those—the reprehensibility guidepost—is " '[t]he most important indicium of the reasonableness of a punitive damages award[.]' " *Campbell*, 538 US at 419 (quoting *Gore*, 517 US at 575). The Court has instructed that we determine reprehensibility by considering whether

> "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. * * * The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect. It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence."

*Id.* at 419 (citations omitted).

In this case, the Court of Appeals concluded that two of the five reprehensibility subfactors identified in *Campbell* and *Gore* were present: "plaintiff was financially vulnerable, and, to a degree, harm resulted from defendant's 'intentional malice, trickery, or deceit.' " *Hamlin*, 222 Or App at 240. The parties do not disagree, but plaintiff contends that this court should recognize an additional reprehensibility subfactor—defendant's violation of ORS 659A.043.

---

Third, when a defendant's conduct causes substantial harm, the damages awarded generally will be different in degree from those we consider "small." In other words, if a defendant inflicts more than minimal harm, it is likely that a plaintiff will recover substantial compensatory damages and that a single-digit multiplier of that award will produce punitive damages greater than or equal to those produced by a higher multiplier of lower compensatory damages. For example, if a defendant were to cause harm that resulted in an award of $50,000 in compensatory damages, an award of four times that sum would result in punitive damages of $200,000.

In *Gore* and *Campbell*, the Court instructed that we gauge the constitutionality of a punitive damages award by considering whether it is grossly excessive in relation to this state's interests. *Campbell*, 538 US at 416-17; *Gore*, 517 US at 568. In listing the reprehensibility subfactors that it did, the Court recognized that states, including this state, have a particular interest in deterring and punishing conduct that causes its citizens physical harm, evidences a disregard of their health or safety, or takes advantage of their vulnerability.

By requiring employers to reinstate injured workers, the Oregon legislature has protected similar societal interests in workplace safety and the welfare of its citizens. By authorizing an award of punitive damages against employers that breach their obligations under ORS 659A.043, the Oregon legislature has indicated its intent to deter and punish that conduct. By authorizing an award of noneconomic damages against employers that breach their obligations under ORS 659A.043,[12] the Oregon legislature also has recognized that the harm that offending employers inflict may be more than monetary and that a plaintiff who is not reinstated and who is, therefore, unemployed, is in a more vulnerable position than is a person who is employed when he or she suffers monetary loss. A person who suffers a loss of employment is without the present ability to earn money to recover economic loss and to avoid further consequential loss.

Although the Supreme Court did not specifically identify the interests protected by ORS 659A.043 as reprehensibility subfactors in *Campbell* and *Gore*, we think that

---

[12] ORS 659A.885(1) authorizes a court, in a civil action under ORS 659A.043, to "order injunctive relief and any other equitable relief that may be appropriate, including but not limited to reinstatement or the hiring of employees with or without back pay."

A court is further authorized to award "compensatory damages or $200, whichever is greater, and punitive damages[.]" ORS 659A.883(3). Compensatory damages include both economic and noneconomic damages. *See Tadsen v. Praegitzer Industries, Inc.*, 324 Or 465, 928 P2d 980 (1996) (under earlier, but identical, version of ORS 659A.885(3), plaintiff's compensatory award included both economic and noneconomic damages); *Griffin v. Tri-Met*, 318 Or 500, 870 P2d 808 (1994) (same).

the Oregon legislature's affirmative action to protect qualitatively similar state interests permits us to consider defendant's statutory violation in our reprehensibility analysis. When we also recognize, as did the jury and the Court of Appeals, that defendant's conduct included "intentional malice, trickery, or deceit," we conclude that defendant's conduct was more than minimally reprehensible.

In reaching that conclusion, we do not mean to indicate that we consider defendant's conduct to approach that of the defendant in *Williams*, 340 Or at 39-43. In that case, we considered the conduct of the defendant to be "extraordinarily reprehensible" because the defendant had "engaged in a prolonged pattern of egregious and deceitful conduct that pose[d] an extreme threat to the health and safety of a significant segment of the population of the state[.]" *Goddard*, 344 Or at 258, 258 n 3 (describing conduct of defendant in *Williams*). In this case, we conclude only that defendant's conduct was sufficiently reprehensible that, in the circumstances presented—where the compensatory damages are low and the ratio between the compensatory and punitive damages is not a reliable indicator of the constitutionality of the punitive damages award—defendant's conduct may justify an award of punitive damages in excess of a single-digit multiplier of the compensatory damages awarded.

We next consider the third guidepost that the Supreme Court has identified—comparable civil or criminal sanctions. The parties do not challenge the conclusion of the Court of Appeals that the only sanction that Oregon law provides for violation of ORS 659A.043 is a civil action against an offending employer and that, as a result, the third guidepost neither militates against, nor supports, a punitive damages award in excess of a single-digit multiplier of the compensatory damages award. *See Hamlin*, 222 Or App at 247 (stating conclusion). In that circumstance, the third guidepost does not play a significant role in our analysis.

Having decided that the punitive damages award in this case may exceed a single-digit multiplier of the compensatory damages award without violating due process, we still

must decide whether the amount of punitive damages actually awarded—$175,000—is, nevertheless, "grossly excessive." In that regard, we note first that the jury's award is different in order of magnitude from the multimillion dollar, three-digit multiplier, punitive damages awards that the Supreme Court invalidated as "grossly excessive" in *Gore* ($2 million punitive damages award in 500:1 ratio to compensatory damages) and *Campbell* ($145 million punitive damages award in 145:1 ratio to compensatory damages). The punitive damages award in this case is less than $200,000 and is a low double-digit (22:1) multiplier of the compensatory damages award.

We also note that the amount of the punitive damages award in this case is not "grossly excessive" when measured by awards that legislatures and courts have permitted in similar circumstances. For instance, Title VII prohibits certain acts of discrimination in employment and authorizes the imposition of punitive damages on a showing that the defendant "engaged in a discriminatory practice" with "malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 USC § 1981a(b)(1). Title VII places limits on the total amount of compensatory and punitive damages that may be awarded, ranging from a limit of $50,000 for employers with fewer than 100 employees to a limit of $300,000 for employers with 500 or more employees. 42 USC § 1981a(b)(3)(A)-(D). Title VII permits punitive damages up to those statutory caps without regard to the ratio between compensatory and punitive damages. For employers like defendant, with more than 200, but less than 500 employees, the applicable limit is $200,000. 42 USC § 1981a(b)(3)(C). The award of punitive and compensatory damages in this case is less than that sum.

In the following cases, appellate courts similarly have approved punitive damages in amounts and in ratios greater than or similar to those present in this case: *Rodriguez-Torres v. Caribbean Forms Mfg.*, 399 F3d 52, 56 (1st Cir 2005) (punitive damages award of $199,999; compensatory damages of $1, for 199,999:1 ratio in Title VII discrimination claim); *Romanski v. Detroit Entertainment, LLC*, 428 F3d 629, 649 (6th Cir 2005), *cert den*, 549 US 946 (2006) (punitive damages of $600,000; economic damages of $279.05, for 2,150:1 ratio, for false arrest and confiscation of

lunch voucher by casino security officer); *Kemp v. American Tel & Tel Co.*, 393 F3d 1354, 1365 (11th Cir 2004) (punitive damages of $250,000; compensatory damages of $115.05, for 2,173:1 ratio, for defrauding customers); *Mathias v. Accor Economy Lodging*, 347 F3d 672, 674 (7th Cir 2003) (punitive damages of $186,000; compensatory damages of $5,000, 37:1 ratio, for bedbug-infested hotel room); *Deters v. Equifax Credit Information Services*, 202 F3d 1262, 1266 (10th Cir 2000) (punitive damages of $295,000; compensatory damages of $5,000, for 59:1 ratio, for sexual harassment claim); *Goff,* 297 SW3d at 196 (punitive damages of $500,000; compensatory damages of $3,305, for 151:1 ratio, in common-law nuisance action); *State v. Carpenter*, 171 P3d 41, 66 (Alaska 2007) (punitive damages of $150,000; economic damages of $5,042, for 30:1 ratio, in spoliation of evidence claim); *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 95 P3d 977, 982-83 (2004) (punitive damages of $300,000; compensatory damages of $735, for 408:1 ratio, in breach of contract case); *Craig v. Holsey*, 264 Ga App 344, 590 SE2d 742 (2003), *cert den*, 543 US 820 (2004) (punitive damages of $200,000; compensatory damages of $8,801 for 22:1 ratio, for car accident caused by intoxicated driver). *See also* Goldman and Levin, 2 NYU J L & Bus at 550-55 (in cases in which compensatory damages were less than $12,000, punitive damages in double digit or greater ratio awarded and judicially affirmed in 68% of cases; punitive damages greater than $175,000 awarded and judicially affirmed in 32% of cases).

In this case, the compensatory damages are small and the ratio between the punitive and compensatory damages—22:1—is in the low double digits. That ratio is higher than would be constitutionally permissible if the compensatory damages were more substantial, but is not so high that it makes the award "grossly excessive." The amount of the punitive damages award—$175,000—also is not so high that we can say that it exceeds, rather than serves, this state's interests in deterring and punishing the violation of ORS 659A.043.[13] We hold that the Court of Appeals erred in

---

[13] The dissent agrees that the compensatory damages in this case are small enough that the otherwise permissible multiplier (the dissent assumes a permissible multiplier of three) does not establish the maximum constitutionally

reversing the jury's punitive damages verdict, and we reinstate it.

The decision of the Court of Appeals is reversed, and the judgment of the circuit court is affirmed.

**GILLETTE, J. pro tempore,** dissenting.

If the only issue in this case were whether a punitive damages award of $175,000 is "grossly excessive," given defendant's conduct and the jury's $6,000 compensatory damages award, I would have little trouble concluding that it is not. However, the Supreme Court has instructed us not only that punitive damages awards that are "grossly excessive" are impermissible because they violate the Due Process Clause, *see State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 US 408, 416, 123 S Ct 1513, 155 L Ed 2d 585 (2003), but it also has provided "guideposts" that this court, and other lower courts, must use in reviewing punitive damages awards for compliance with the Due Process Clause. *Id.* at 418. My disagreement with the majority is based on its application of those guideposts—or, rather, its failure to apply one of those guideposts because of what it views as an exception to the guidepost.

Before turning to the majority's rationale for its conclusion that a 22:1 ratio of punitive to compensatory damages in this case is consistent with the Supreme Court's case law, I pause briefly to consider this court's obligation to follow the Court's guidance. When the Supreme Court decides a case, its decisions almost invariably contain "explanatory language that is intended to provide guidance to lawyers and judges in future cases." *Carey v. Musladin*, 549 US 70, 79, 127 S Ct 649, 166 L Ed 2d 482 (2006) (Stevens, J., concurring in the judgment). Lower court judges may not "discount the importance of such guidance on the ground that it may not have been strictly necessary as an explanation of the Court's specific holding in the case." *Id.* Indeed, even when applying its own precedents, the Court generally "adhere[s] not only to the holdings of our prior cases, but also their explications of

permissible punitive damages award. In the dissent's view, however, the amount of the punitive damages must be capped at $50,000. 349 Or at 551. The Due Process Clause does not impose such a cap.

the governing rules of law." *Allegheny County v. Greater Pittsburgh ACLU*, 492 US 573, 668, 109 S Ct 3086, 106 L Ed 2d 472 (1989) (Kennedy, J., concurring in judgment in part and dissenting in part). Thus, to my mind, when the Court states that specific numerical ratios should be applied to determine whether a punitive damages award exceeds constitutional limits, those statements are not mere *dicta*, but rather constitute binding precedent that we are obliged to follow. Our federal system requires us to do what the Court says, not only what the Court does.

To be sure, the majority does not contend that we are free to ignore the Court's "ratio" guidepost. However, in relying on the "small" amount of compensatory damages awarded in this case to justify departing from the numerical standards that the Court has articulated, the majority, in my view, improperly "discount[s] the importance of [the Court's] guidance."

As to the substance of the majority's conclusion, it appears to me that the majority's approach turns on two key steps. First, it asserts that the Supreme Court has recognized an exception to the ratio guidepost for any "small" award of compensatory damages. Second, it concludes that any compensatory damages award less than $12,000 - $25,000 is "small."

Both conclusions are problematic. The identified exception to the ratio guidepost is not for all "small" damages awards, but only for those that also involve particularly egregious misconduct—which is not true in this case. More importantly, it is bad policy to allow punitive damages awards to be open-ended below some arbitrary amount of compensatory damages deemed "small," because it means that many defendants who do more harm will be punished less.

I begin with the applicable law. Briefly, the Supreme Court has articulated three guideposts to be used to determine whether a punitive damages award exceeds the limits of due process:

"(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential

harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases."

*Campbell*, 538 US at 418; *see BMW of North America, Inc. v. Gore*, 517 US 559, 574-75, 116 S Ct 1589, 134 L Ed 2d 809 (1996) (same).

My primary dispute with the majority relates to the second of those guideposts: the relationship between punitive and compensatory damages. The purpose of the ratio guidepost is to "ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Campbell*, 538 US at 426; *see Gore*, 517 US at 580 (noting that "[t]he principle that exemplary damages must bear a 'reasonable relationship' to compensatory damages has a long pedigree"). Although the United States Supreme Court has declined to set any bright-line limits for those ratios, the Court has expressly stated "that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Campbell*, 538 US at 425; *see id.* ("[s]ingle-digit multipliers are more likely to comport with due process"). And, in an exhaustive discussion of *Gore* and *Campbell*, this court concluded that punitive damage awards generally should be limited to single-digit ratios—and in cases of purely economic injury, to a 4:1 ratio. *See Goddard v. Farmers Ins. Co.*, 344 Or 232, 259-61, 179 P3d 645 (2008) (so explaining).

The Supreme Court has recognized three exceptions to the ratio guidepost. *See Campbell*, 538 US at 425 (listing exceptions); *Gore*, 517 US at 582 (same). *Gore* stated the only such exception relevant to this case as follows: "[L]ow awards of compensatory damages may properly support a higher ratio than high compensatory awards if, for example, a particularly egregious act has resulted in only a small amount of economic damages." 517 US at 582. The Court repeated that exception in *Campbell*, directly quoting the *Gore* phrasing: "[R]atios greater than those we have previously upheld may comport with due process where 'a particularly egregious act

has resulted in only a small amount of economic damages.' " 538 US at 425 (quoting *Gore*, 517 US at 582).

In this case, however, the majority truncates that exception: It drops the requirement of "particularly egregious misconduct" and expands the exception to reach *all* "small" compensatory damage awards. The majority's support for that proposition is a single case: *Exxon Shipping Co. v. Baker*, 554 US 471, 128 S Ct 2605, 171 L Ed 2d 570 (2008). *See* 349 Or at 534 (so stating). *Exxon Shipping* does not support that conclusion, however.

*Exxon Shipping*'s discussion of the constitutional limits on punitive damages concerned a point of law that was not at issue in the case.[14] And while the Court omitted to mention the "particularly egregious" requirement in the text of the opinion, it specifically *quoted* the "particularly egregious" requirement in a parenthetical. 554 US at 494.[15] Yet the majority necessarily concludes that the Court intended to abolish the element. To put it bluntly, the notion that the Supreme Court has abolished the "particularly egregious" requirement is not a defensible reading of *Exxon Shipping*.

I understand the majority's motivation, however. I believe that the majority is concerned about the consequences of having the ratio guidepost apply to ordinary small awards—and justifiably so. No matter what the tort is, if a jury awards only $1 in nominal compensatory damages, a single-digit ratio of punitive damages—$9—is far too low. In such cases, the award must be greater than the single-digit ratio approved in *Gore* and *Campbell*. We do need a solution to that quandary.

---

[14] *See Exxon Shipping*, 554 US at 501-02 ("Today's enquiry differs from due process review because the case arises under federal maritime jurisdiction, and we are reviewing a jury award for conformity with maritime law, rather than the outer limit allowed by due process * * *.").

[15] The Court stated:

"Regardless of culpability, however, heavier punitive awards have been thought to be justifiable * * * when the value of injury and the corresponding compensatory award are small (providing low incentives to sue), *see, e.g.,* [*Gore*, 517 US at 582] ('[L]ow awards of compensatory damages may properly support a higher ratio * * * if, for example, *a particularly egregious act* has resulted in only a small amount of economic damages') * * *."

554 US at 494 (second alteration and second ellipsis in original; emphasis added).

The majority's solution is effectively to presume that the Supreme Court did not mean what it said. The majority does not recognize, however, that doing so creates as many problems as it solves. It is not only bad law, it is bad policy. Let me explain. The majority, having concluded that the ratio guidepost does not apply to any "small" compensatory damages award, then suggests that the upper end of "small" awards is in the $12,000 - $25,000 range. 349 Or at 537-38. From that idea, the majority leaps to the conclusion that $8,000 in compensatory damages permits punitive damages of *at least* $175,000.

But consider what would happen if this plaintiff had suffered $12,000 in damages, not just $8,000. At that point (or thereabouts), the ratio guidepost would kick in, and accordingly the maximum ratio (subject to adjustment) generally would be 4:1. *See Goddard*, 344 Or at 260 (for cases of purely economic injury). Therefore, the maximum constitutionally permissible punishment would be limited to only $48,000 (subject to some adjustment up or down). Similarly, if this plaintiff had been injured $25,000, he would have been entitled to punitive damages of only $100,000.

That point is worth emphasizing. If this defendant had done more than *triple* the amount of damages in this case ($25,000), the maximum constitutionally permissible punitive damages award would be *reduced by over 40%* from what the majority approves here. If this defendant had done quadruple the amount of damages ($32,000), the maximum permissible punitive damages award still would be reduced by over 25% (to $128,000).

How could an equitable rule require a plaintiff who suffers *more* harm to receive *less* punitive damages? How could a fair rule permit a defendant who inflicts more harm to be punished less? The majority's rule will effectively reward defendants for inflicting more harm on plaintiffs, while punishing those plaintiffs unfortunate enough to have suffered extra harm. However well intentioned, it is a mistake for the majority to institutionalize that result. "[T]he penalty scheme [wrongdoers] face ought to threaten them with a fair probability of suffering in like degree when they wreak like damage." *Exxon Shipping*, 554 US at 502.

The majority's approach creates another problem. In its effort to avoid punitive damages awards that are *too small*, the majority instead allows punitive damages awards that are *too large*. There are plenty of small torts that deserve punitive damage awards, but not $175,000 or more. The defendant who publicly spits in a plaintiff's face should be punished—but $200,000 worth? Yet the majority's deferential analysis of small compensatory damage awards would impose no real restraint on such an outcome.

For the lower half of damage awards, then, the majority creates a topsy turvy world, in which the less harm you do, the more you can be punished. Measured by the actual damages that the defendants cause, the least dangerous defendants can be punished with constitutionally inappropriate punitive damages, while the more dangerous defendants are protected by the ratio guidepost.[16]

---

[16] The majority, disagreeing with my analysis, offers three responses. All of them miss the point.

The majority first asserts that there is no "hard and fast numerical line" defining "small" compensatory damages awards. 349 Or at 538 n 11. The absence of a "hard and fast" rule does not affect the validity of my contention. If *this* jury had awarded *this* plaintiff more compensatory damages—which plaintiff asked the jury to do—then *this* compensatory damages award would not have been "small," and *this* punitive damages award would have been unconstitutional.

Second, the majority (apparently assuming for purposes of argument that $12,000 does mark the upper limit of "small" compensatory damages awards) asserts that if an $11,000 award would justify $175,000 in punitive damages, then a $12,000 award would justify a comparable award. 349 Or at 538 n 11. The problem is that the majority has just denied what its opinion holds. If a $12,000 compensatory damages award is not "small," then the "small compensatory damages" exception to the ratio guidepost *does not apply, by definition*. The majority thus cannot appeal to the "small compensatory damages" exception to justify a punitive damages award of $175,000 on compensatory damages of $12,000. Such an award is sustainable, if at all, only if some other exception applies.

Third, the majority seemingly asserts that there is no problem because, when the compensatory damages are large enough, even those punitive damages awards subject to the ratio guidepost will exceed the award here. "[I]f a defendant were to cause harm that resulted in an award of $50,000 in compensatory damages, an award of four times that sum would result in punitive damages of $200,000." 349 Or at 539 n 11. That statement is true, but beside the point. The majority's exception for "small" compensatory damages awards (below $12,000) necessarily means that a whole range of defendants who cause more than $12,000 harm will be punished less. Indeed, at a 4:1 ratio for economic harm, a defendant would have to inflict nearly $44,000 in damages to justify the same $175,000 punitive damages award that the majority approves here for $8,000.

I would propose a different solution. The key is to recognize that some punitive damages awards are small enough that they do not implicate substantive due process concerns, even if the misconduct essentially resulted in no harm to a party at all. An entire genre of court cases regularly involves financial penalties that are intended to punish and deter misconduct. Those financial penalties are familiar to all of us: They are civil penalties and criminal fines. When those civil penalties and criminal fines are in "ordinary" amounts, their constitutionality is neither disputed nor disputable.

So, too, then, with awards of punitive damages. Such awards, when comparable in amount to civil penalties or criminal fines already prescribed by the legislature, do not raise any concerns about being "grossly excessive," which is what the *Gore* guideposts are intended to protect against. *See Campbell*, 538 US at 416-17 ("The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." (Citations omitted.)); *Gore*, 517 US at 562 (to the same effect).

For that reason, it would be easy for the courts to determine whether the award was, in effect, *de minimis non curat lex*.[17] Awards below the *de minimis* amount would not be subject to the *Gore* guideposts and would not require any sort of substantive *Gore/Campbell* judicial review at all. And, when the court identified an unconstitutional punitive damages award, the appropriate remittitur would never drop below the *de minimis* amount.[18]

---

[17] "The law does not notice or concern itself with trifling matters." *Black's Law Dictionary* 1826 (9th ed 2009).

[18] The majority effectively asserts that I am also recognizing an additional "exception" to the ratio guidepost. 349 Or at 535 n 8. That misunderstands the breadth of my argument. If it were an exception, it would apply only to the ratio guidepost, and so courts still would have to address the other two *Gore* guideposts (reprehensibility and comparable civil penalties). As I just noted, however, I would conclude that awards below the *de minimis* limit are not subject to any substantive due process review at all.

The majority's suggestion that my proposal would violate Supreme Court precedent by setting "rigid benchmarks beyond which a punitive damages award becomes unconstitutional," 349 Or at 535 n 8 (internal quotation marks and citation omitted), also misreads my argument. The *de minimis* award amount is not a ceiling beyond which punitive damages may not go. It is a safe harbor against substantive due process challenges to any punitive damages award up to $50,000.

It is worth pointing out, too, that, under my analysis, the exception to the ratio requirement stated by the Supreme Court—"a particularly egregious act [that] has resulted in only a small amount of economic damages"—remains important. There will be cases in which the *de minimis* award would fail to recognize adequately how reprehensible the misconduct was and how near plaintiff came to suffering extraordinary damages. The example offered by the majority perfectly illustrates how the exception applies: A defendant who fires a gun wildly into a crowd but only does $10 worth of damages to a pair of glasses should receive a more severe punishment than the *de minimis* award. 349 Or at 533.

Based on my review of existing legislation, I would be inclined to conclude that the *de minimis* amount should be $50,000. That amount represents the maximum criminal fine that the legislature permits to be imposed against a corporation for committing a felony. ORS 161.655(1)(a). That choice represents a balance of factors. On the one hand, criminal fines may be imposed only after a trial with procedural safeguards that are not available in civil actions; that fact would counsel for a lower *de minimis* amount. *See Campbell*, 538 US at 428 ("Great care must be taken to avoid use of the civil process to assess criminal penalties that can be imposed only after the heightened protections of a criminal trial have been observed, including, of course, its higher standards of proof."). On the other hand, corporations can only be fined—they face no risk of imprisonment—and the fine for corporations is well below that which may be imposed on individuals. *See* ORS 161.625(1) (fines for individuals can range from $125,000 for a Class C felony to $500,000 for murder or aggravated murder). Furthermore, in many cases corporations represent the more dangerous civil defendants. In this particular case, defendant is a corporation. The choice of $50,000 thus seems reasonable and appropriate.

In this case, the jury awarded $175,000. That is well above the *de minimis* amount, so we should apply the *Gore* guideposts. As applied to this case, I agree with the Court of Appeals that defendant's misconduct was not particularly reprehensible. *See Hamlin v. Hampton Lumber Mills, Inc.*, 222 Or App 230, 239-41, 193 P3d 46 (2008), *on recons*, 227 Or App 165, 205 P3d 70 (2009) (explaining that only two of the

five reprehensibility subfactors exist here).[19] Because this case involved only economic harm—it is not an action for physical injury, but for unlawful refusal to reinstate the plaintiff to his job—I would conclude that the appropriate ratio for punitive damages under *Gore* should be 3:1, or roughly $24,000. *See Goddard*, 344 Or at 260 ("as a very general rule of thumb," punitive damages awards for solely economic injury should not significantly exceed 4:1). That amount, however, is less than the *de minimis* amount of $50,000. Accordingly, I would hold that the punitive damages award should be subject to a remittitur of punitive damages to $50,000.

I add one final note: a plea to the Supreme Court of the United States. For years this court generally, and I personally, have struggled to apply *Gore* and *Campbell* faithfully to the cases before us. This case represents but one of the many problems that have cropped up in the seven years since the Court decided *Campbell*. The courts around are in need of—indeed, I will assert that we deserve—further guidance that only the Court can provide. Whether the Court agrees with my analysis, or the majority, or something in between, does not matter to me. But it would be a responsible act of comity for the Court to say something clear to help in future cases.

I respectfully dissent.

Balmer, J., joins in this dissenting opinion.

---

[19] I am not persuaded by the majority's assertion that the violation of the statute at issue here represents an additional form of reprehensibility beyond the factors identified by the Supreme Court in *Gore* and *Campbell*. 349 Or at 540-41.